UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sean Adam Rogers,

    Plaintiff,

v.

J. Bush *et al.*,

    Defendants.

Case No. 20-11627
District Judge Laurie J. Michelson
Magistrate Judge Jonathan J.C. Grey

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sean Adam Rogers brings a complaint under 42 U.S.C. § 1983 against Jeremy Bush, John Pieron, and Michael Trouten for violation of his First Amendment and Eighth Amendment rights. (ECF No. 2.) This matter is before the Court on the defendants' motion for summary judgment. (ECF No. 33.)

On November 19, 2021, District Judge Laurie J. Michelson referred pretrial matters to the undersigned. (ECF No. 22.) For the following reasons, the undersigned **RECOMMENDS** that the defendants' motion for summary judgment be **GRANTED**.

I.   Background

   A. Rogers' Complaint

Rogers is an incarcerated person in custody of the Michigan Department of Corrections (MDOC) challenging the conditions of his confinement at the Charles Egeler Reception and Guidance Center. (ECF No. 2.) He alleges that Bush, Pieron, and Trouten violated his First Amendment and Eighth Amendment rights. *Id.* In his amended complaint, Rogers sets forth the following three allegations.

   1. **Claim against Bush and Pieron regarding September 16, 2016 Incident**

On September 16, 2016, Bush and Pieron subjected Rogers to cruel and unusual punishment by taking away his yard access and personal property, including a duffle bag that contained Rogers' legal materials, over-the-counter-medications, and skin creams. (*Id.* at PAGEID.248.) Bush and Pieron forced him to drink "rusty" water on the same day. *Id.*

On September 20, 2016, Rogers prepared a grievance against Bush and Pieron about the September 16, 2016 incident(s), which received identifier RGC-16-09-00748-19z ("Grievance 0748"). (*Id.* at PAGEID.246.) Rogers never received Step I, II, or III responses from MDOC. *Id.*

### 2. Claim against Bush and Pieron regarding September 21, 2016 Incident

On September 21, 2016, Rogers asked non-defendant MDOC staff for his duffle bag, and they told Rogers that Bush and Pieron directed staff to not give the duffle bag to Rogers. (*Id.* at PAGEID.248.) The same day, Rogers was in a cell that had "rusty" drinking water and a toilet "that did not work well", and he was forced to take a shower in "rusty" water and black mold without shower shoes. *Id.* Rogers complained about the conditions and showed the conditions to Bush and Pieron. *Id.* Rogers requested to move from the cell, but Bush and Pieron denied the request. *Id.*

On September 26, 2016, Rogers prepared a grievance (Grievance No. RGC-16-10-0809-03d, or "Grievance 0809") against Bush and Pieron about the unsanitary shower conditions. (*Id.* at PAGEID.247.)

### 3. Claim against Trouten

On December 2, 2016, Rogers prepared a grievance (Grievance No. RGC-17-07-0007-28j, or "Grievance 0007") against Trouten for his failure to process Rogers' grievances against Bush and Pieron. (*Id.* at PAGEID.247, 249.)

### B. Procedural History

According to MDOC records, Rogers pursued three grievances arising out of the Charles Egeler Reception and Guidance Center through Step III of the MDOC

grievance process: (1) grievance against Pieron and non-defendants[1] for placement in administrative segregation without receiving notice that a guilty finding in a misconduct hearing could result in a higher security classification (Grievance No. RGC-16-11-0851-07z, or "Grievance 0851") (ECF No. 33-3, PAGEID.166–169), (2) Grievance 0809 against Bush and Pieron for Rogers' assignment to unsanitary showers in a shower covered in black mold (*Id.* at PAGEID.170–173), and (3) Grievance 0007 against Trouten for retaliation and interference with Rogers' grievances (*Id.* at PAGEID.174–176).

On February 15, 2022, Bush, Pieron, and Trouten moved for summary judgment based on Rogers' failure to file his suit within the statute of limitations and failure to exhaust administrative remedies. (ECF No. 33.) Rogers responded (ECF No. 34), and Bush, Pieron, and Trouten replied (ECF No. 35).

**C. MDOC Grievance Process**

MDOC provides a three-step grievance process that prisoners must follow to exhaust administrative remedies. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019). Per MDOC policy, grievants must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* ¶ S.  Prior to Step I, a grievant must "attempt to resolve the issue with the staff member

---

[1] In his grievance, Rogers names Deputy Warden "Lindsey" and psychologist "Clark," neither of whom are defendants in the matter at hand. (ECF No. 33-3, PAGEID.168.)

4

involved within two business days." *Id.* ¶ Q. If there is no resolution, the grievant may file a Step I grievance within five business days. *Id.* At Step II, a grievant may appeal the denial of a Step I grievance within ten business days after receipt of the Step I response. *Id.* ¶ DD. At Step III, a grievant may appeal the Step II denial within ten business days after receipt of the Step II response. *Id.* ¶ HH. Grievances at all steps are logged in a computerized tracking system. *Id.* ¶¶ X, EE, II.

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, a fact is material "only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material

fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

### III. Statute of Limitations Analysis

The Court first turns to the statute of limitations arguments. Bush, Pieron, and Trouten argue that Rogers filed his suit outside the statute of limitations on all claims. (ECF No. 33.) Rogers disagrees. (ECF No. 34, PAGEID.182.)

Section 1983 claims are governed by the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). Under Michigan law, the statute of limitations for personal injury claims is three years. Mich. Comp. Laws §600.5805(10); *see also Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Specifically, the Sixth Circuit has held that Michigan's three-year statute of limitations governs § 1983 claims. *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).

The statute of limitations period begins to run when a plaintiff knows or has reason to know about the act providing the basis for the claimed injury. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (citation omitted). Since prisoners are "prevented from bringing suit in federal court for the period of time required to exhaust," the applicable statute of limitations remains tolled while the prisoner exhausts the available remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

The Court must determine whether Rogers should receive equitable tolling for pursuing administrative remedies for Grievance 0748, Grievance 0809, and Grievance 0007. The alleged incidents occurred between September 16, 2016 and December 2, 2016, and Rogers filed his complaint on June 22, 2020. (ECF No. 2.)

**A. Claim against Bush and Pieron regarding September 16, 2016 Incident**

On September 20, 2016, Rogers allegedly filed Grievance 0748 against Bush and Pieron. (ECF No. 2, PAGEID. 246.) The Charles Egeler Reception and Guidance Center does not retain grievance documents after four years. (ECF No. 33, PAGEID.123.) As a result, the defendants do not have the records for Rogers' Step I grievance, and any Step II appeal, for Grievance 0748. *Id.*

The defendants argue that the same amount of tolling Rogers receives for Grievance 0007 applies to Grievance 0748, explaining that Rogers referenced

7

Grievance 0748 in Grievance 0007. (ECF No. 33, PAGEID.123.) The Court declines to infer the period of tolling without documentation and resolves this claim for failure to exhaust, as discussed below.

### B. Claim against Bush and Pieron regarding September 21, 2016 Incident

On April 7, 2017, MDOC alerted Rogers that he had submitted an incomplete Step III appeal for Grievance 0809. (ECF No. 33-3, PAGEID.165.) Nearly three years later, on February 4, 2020, Rogers corrected his Step III appeal, and on February 24, 2020, MDOC provided their Step III appeal decision. (*Id.* at PAGEID.170–171.)

The Court declines to equitably toll the statute of limitations from April 7, 2017 (the date MDOC informed Rogers that his Step III appeal was incomplete) to February 4, 2020 (the date Rogers filed his corrected Step III appeal). In considering the appropriateness of equitable tolling of the statute of limitations, courts consider the following factors: lack of notice of filing requirement; lack of constructive knowledge of filing requirement; diligence in pursuing one's right; absence of prejudice to the defendant; and plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir. 1998).

Here, Rogers' failure to correct his Step III appeal for nearly three years, without explanation, suggests a great lack of diligence and compels the Court not to apply equitable tolling to the entire three-year period. *See id.* However, given its brevity, the Court finds it is appropriate to toll the 20-day period between Rogers' corrected Step III appeal and the MDOC's Step III decision. *See id.*

Therefore, the statute of limitations for Grievance 0809 is tolled from February 4, 2020 (the date Rogers filed his corrected Step III appeal) to February 24, 2020 (the date MDOC issued its Step III decision), a period of 20 days.[2] Adding those 20 days to April 7, 2017, to meet the statute of limitations, Rogers would have had to file a complaint three years from April 27, 2017, on or before April 27, 2020. *Brown*, 209 F.3d at 596.

Rogers filed his complaint on June 22, 2020, which made his claim time-barred.

**C. Claim against Trouten**

On March 28, 2017, MDOC provided their Step III appeal decision for Grievance 0007. (ECF No. 33-3, PAGEID.174.) The statute of limitations for

---

[2] Rogers argues that he filed within the statute of limitations because three years after April 7, 2017 (the date MDOC informed Rogers that his Step III appeal was incomplete) is April 7, 2020, and MDOC issued their Step III decision prior to that date on February 24, 2020. (ECF No. 34, PAGEID.182.) However, the operative deadline is the date Rogers filed his complaint (June 22, 2020), not the date that MDOC issued its Step III decision. *See Brown*, 209 F.3d at 596.

Grievance 0007 is therefore tolled from December 2, 2016 (the date Rogers filed Grievance 0007) to March 28, 2017 (the date MDOC issued its Step III decision). To file within the statute of limitations, Rogers would have had to file a complaint on this claim three years from March 28, 2017, on or before March 28, 2020. *Brown*, 209 F.3d at 596. Since more than three years elapsed before Rogers filed his complaint on June 22, 2020, this claim is also time-barred.

Rogers' claims based on Grievance 0809 and Grievance 0007 are time-barred by the statute of limitations. Accordingly, Bush, Pieron, and Trouten are entitled to summary judgment.

**IV.   Exhaustion Analysis**

Bush, Pieron, and Trouten argue that Rogers failed to properly exhaust his administrative remedies. (ECF No. 33.) Rogers refutes this. (ECF No. 34.) The Court finds that even if this action were not barred by statute of limitations, Rogers failed to exhaust his administrative remedies. The defendants are thus also entitled to summary judgment on this alternate ground.

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing an action about prison conditions. 42 U.S.C. § 1997e(a). The Supreme Court requires that a grievant exhaust all administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and

10

that unexhausted claims cannot be brought in court."). It is also "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. Proper exhaustion entails "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation omitted).

Failure to exhaust is an affirmative defense, so prisoners are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. The burden thus rests on defendants to establish failure to exhaust. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Once the defense of failure to exhaust is raised, the grievant must "present 'significant probative evidence' to defeat the motion for summary judgment." *Id.*

Here, Rogers was required to undertake all steps of the MDOC process to fully exhaust his grievances. Bush, Pieron, and Trouten, who bear the burden of proof, provided Rogers' Step III grievance report, which lists every grievance Rogers pursued through Step III. (ECF No. 33-3.) According to the report, Rogers pursued three grievances arising out of the Charles Egeler Reception and Guidance Center through Step III: Grievance 0851,[3] Grievance 0809, and Grievance 0007. *Id.* Only Grievances 0809 and Grievance 0007 are relevant to Rogers' complaint.

---

[3] As discussed above, Grievance 0851 pertains to Rogers' placement in administrative segregations. (ECF No. 33-3, PAGEID.166–167.) Rogers does not discuss that incident in his complaint. Accordingly, Grievance 0851 is not relevant to the matter at hand.

11

### A. Claim against Bush and Pieron regarding September 16, 2016 Incident

On September 20, 2016, according to Rogers' complaint, Rogers filed Grievance 0748 against Bush and Pieron. (ECF No. 2, PAGEID. 246.) As mentioned above, MDOC does not have records for Rogers' Step I grievance, and any Step II appeal, for Grievance 0748. (ECF No. 2, PAGEID.246.)

Rogers argues that he never received a Step II response from MDOC. (ECF No. 34, PAGEID.182.) However, even if Rogers never received that decision, MDOC policy states that if a grievant does not receive a timely response, they may still file an appeal to the next step. MDOC Policy Directive ¶ DD.

Additionally, the Step III grievance report does not list Grievance 0748, which signifies that Rogers did not pursue his grievance through Step III. (ECF No. 33-3.) Since Rogers did not pursue a Step III appeal for Grievance 0748, Rogers failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 90.

### B. Claim against Bush and Pieron regarding September 21, 2016 Incident

On October 6, 2016, Rogers filed Grievance 0809, which asserted that Bush and Pieron subjected Rogers to unsanitary shower conditions. (ECF No. 33-3, PAGEID.172.) At Step I, MDOC denied Grievance 0809, explaining that showers are cleaned after each shower period with a mold-eradicating soap solution. (*Id.* at

12

PAGEID.173.) MDOC denied Rogers' Step II appeal for untimeliness, and MDOC upheld this decision at Step III. (*Id.* at PAGEID. 170–171.)

If MDOC rejects a grievant's response for untimeliness, the grievant did not properly exhaust claims in accordance with the prison's grievance procedure. *Cook v. Caruso*, 531 F. App'x 554, 563 (6th Cir. 2013) (stating that a grievant must receive "merits-based responses at *each step*" of MDOC's grievance procedure for proper exhaustion).

Since MDOC denied Rogers' Step II appeal for Grievance 0809 for untimeliness, Rogers failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

### C. Claim against Trouten

On November 3, 2016, Rogers filed Grievance 0007, which asserted that Trouten interfered with Rogers' grievance process by not providing Rogers with responses. (ECF No. 33-3, PAGEID.176.) At Step I, MDOC denied Grievance 0007. *Id.* MDOC denied Rogers' Step II appeal for untimeliness, and MDOC upheld this decision at Step III. (*Id.* at PAGEID.174–175.)

Rogers argues that he never received a Step II response from MDOC. (ECF No. 34, PAGEID.182.) However, the record shows that Rogers received the Step II appeal decision on February 1, 2017 and the Step III appeal decision on March 28, 2017. (ECF No. 33-3, PAGEID.174–175.) Even if he had never received those

13

decisions, MDOC policy states that if a grievant did not receive a timely response, they may still file an appeal to the next step. MDOC Policy Directive ¶¶ DD, HH.

Since MDOC denied Rogers' Step II appeal for Grievance 0007 for untimeliness, Rogers failed to properly exhaust his administrative remedies. *Cook*, 531 F. App'x at 563.

## V. Conclusion

Accordingly, for the foregoing reasons, the undersigned **RECOMMENDS** that the defendants' motion for summary judgment be **GRANTED**.

Dated:  May 11, 2022                                s/**Jonathan J.C. Grey**
                                                    Jonathan J.C. Grey
                                                    United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 11, 2022.

s/ **S. Osorio**
Sandra Osorio
Case Manager
